# Bleadingheiser *v.* Crumrine, Appellant.

*Decedents' estates—Services—Nursing—Payment—Province of court and jury.*

In an action by a professional nurse against an executor to recover for nursing the testator, the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where it appears that neither the

time of service nor the rate of payment is disputed, but the evidence is conflicting as to whether the proceeds of certain checks given by the testator to the plaintiff were applicable to the payment of the latter for her services, or whether the plaintiff had expended the proceeds of the checks in the purchase of necessary medicines, provisions and supplies for the testator and his household, at the testator's request, or with his knowledge and assent.

*Appeals—Assignments of error—Admission of testimony—Failure to print testimony in connection with assignment.*

An assignment of error to the admission of testimony is defective which fails to set forth the evidence admitted.

Argued April 15, 1907.    Appeal, No. 175, April T., 1907, by defendant, from judgment of C. P. Washington Co., Feb. T., 1906, No. 97, on verdict for plaintiff in case of Clara Bleadingheiser v. E. E. Crumine, Executor of J. W. Nesbit, deceased.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Assumpsit for services rendered as nurse to defendant's testator.    Before TAYLOR, J.

At the trial the defendant claimed that the services had been paid for by checks given by the testator to defendant. Defendant, however, claimed that, with the exception of $100, she had spent the proceeds for medicines, groceries and provisions for the decedent and his household, and that she had done so at his request and with his knowledge.

The court charged in part as follows :

[Does the evidence satisfy you clearly that this plaintiff brought the money that she realized on these checks that were furnished to her by John W. Nesbit and that she had cashed by the Washington Trust Company, was taken by her and turned into the family of John W. Nesbit, or into that household, and that these purchases that were made at the stores admittedly by her were made with money that he furnished her and that she brought back to him, if she did, or was it money that was kept in the house there, as the defendant's witnesses say, for those needs and purposes, and that in no case did Miss Bleadingheiser ever buy anything for the de-

ceased or his household out of the money from these checks or her own money, except in one or two instances of a very small amount, in the case of the mattress, twenty-five cents, where she was to repay that, and were the checks given alone for salary? Did she at any time present to the executor a bill she had, in the form and shape that she paid that money out of her own pocket?] [4]

[And then the plaintiff's witnesses go upon the witness stand again by way of rebuttal to that and show by witnesses that the plaintiff, while nursing the deceased, bought and paid for medicines, groceries and other provisions, and took them to the sick man's home for him, and have argued to you, we admit, those checks were issued to the plaintiff in this suit and that the amounts are correct, less the $10.00, in the $260 which the other side say was for medicine and that $250 of that was for services, but we turned that money back to J. W. Nesbit, that is what was done with the money that the plaintiff realized from these checks which the defendant says were paid to her as wages, except the $100 of a credit, and that is the final claim made by plaintiff's case and argued to you, and it is for you to say under all the evidence whether such claim is consistent with the claim of the plaintiff as put in originally to the executor and the claim as put in here, wherein the plaintiff sought to show by the testimony of a number of merchants, druggists and storekeepers of this town, the amount of medicines and goods she purchased for deceased and paid for, and argues from that, that the money she received evidenced by these three checks, $125, another for $50.00 and another for $250, was money that she received on these checks and took it back to the Nesbit house and gave it to the sick man, and that it was with that money that is the claim now made by the plaintiff's counsel here with regard to these checks in his argument to you, that was used by John W. Nesbit to meet the current expenses of his sickness and the running of the house by his sister and niece which the plaintiff asks you to find from all the evidence in the case was paid out by Nesbit to the nurse with which, from time to time, the nurse bought things for him on these various trips to Washington.] [5]

Verdict and judgment for plaintiff for $435. Defendant appealed.

*Errors assigned* were (1, 2) rulings admitting evidence, but not setting forth the evidence in the assignment; (4, 5) above ·instructions, quoting them.

*Boyd Crumrine*, with him *E. E. Crumrine*, for appellant.

*R. W. Irwin*, of *Irwin, Wiley & Morgan*, with him *I. W. Baum*, for appellee.

OPINION BY ORLADY, J., October 7, 1907 :

The judgment we are asked to review was recovered by the plaintiff in the court below for professional services rendered by her, as a nurse to John W. Nesbit, deceased, during twenty-eight and one-half weeks at the rate of $25.00 per week. The services were performed under a contract made by the plaintiff with the decedent, and neither the time of service nor the rate of payment is disputed. The substantial matter in dispute on the trial was, whether certain checks made by John W. Nesbit to the order of the plaintiff, the proceeds of which were received by her, were to be credited as payments to her account, or whether she had expended the money received from that source in the purchase of necessary medicines, provisions and supplies for the decedent and his household. It was clearly shown that the nurse did make many such purchases, and paid for them in cash, and while the testimony is conflicting, and some of the witnesses show great bias in their statements, there is ample evidence from which the jury could fairly and reasonably conclude that the moneys received by the nurse (independent of the sum of $100 which she credited on her account) were honestly expended by her on his orders, or with his knowledge, for his benefit. The jury having on sufficient evidence found the facts in her favor ends that branch of the case.

The manner of its submission by the court, as complained of in the fourth and fifth assignments of error, was none the less fair and adequate in the light of the whole charge. The first and second assignments are so manifestly in violation of rule XVI of this court, that they are not considered, for the reasons repeatedly announced by the Supreme and Superior Courts : Battles v. Sliney, 126 Pa. 460; Gish v. Brown, 171 Pa. 479; Raymond v. Schoonover, 181 Pa. 352; London

Assurance Corporation v. Russell, 1 Pa. Superior Ct. 320; Loeweke v. B. & L. Assn., 21 Pa. Superior Ct. 389; Pizzi v. Nardello, 23 Pa. Superior Ct. 535; Piano Mfg. Co. v. Engberry, 30 Pa. Superior Ct. 543.

The judgment is affirmed.